**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION**

| | |
|---|---|
| TAMMY MANASCO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )     CASE NO.  6:13-cv-00394-JEO |
| | ) |
| CAROLYN   W.   COLVIN,   Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Plaintiff Tammy Manasco brings this action, through counsel, pursuant to 42 U.S.C. §

405(g), seeking review of the final decision of the Acting Commissioner of Social Security

("Commissioner") denying Plaintiff's applications for Disability Insurance Benefits ("DIB") and

Supplemental Security Income benefits ("SSI").  (Doc.[1] 1).  The case has been assigned to the

undersigned United States Magistrate Judge pursuant to this court's general order of reference

dated January 14, 2013.  The parties have consented to the jurisdiction of this court for

disposition of the matter.  *See* 28 U.S.C. § 636(c), FED. R. CIV. P. 73(a).  Upon review of the

record and the relevant law, the undersigned finds that the Commissioner's decision is due to be

affirmed.

---

[1]References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the
pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case
Management/Electronic Case Files (CM/ECF) system.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed an application for DIB and SSI on January 19, 2012, alleging

disability beginning November 28, 2011.  (R. 12, 135, 137).[2]  Her claims were denied initially.

(*Id*.)  Thereafter, she requested a hearing before an Administrative Law Judge ("ALJ"), which

was held on October 16, 2012.  (R. 26).  Plaintiff was represented by counsel at the hearing.  (*Id*.)

The ALJ found that Plaintiff was not under a disability within the meaning of the Social Security

Act.  (R. at 21).  He also found that she had a residual functional capacity ("RFC") for sedentary

work with some limitations.  (R. 15).  In light of these findings, the ALJ issued a decision on

November 8, 2012, denying Plaintiff's request for DIB and SSI.  (*Id*. at 12-22).

Plaintiff requested the Appeals Council review the ALJ's decision.  She submitted

additional evidence consisting of discharge instructions from a hospital emergency room dated

November 22, 2012.  (R. 1-4).  The Appeals Council declined Plaintiff's request for review.  (R.

1).  Therefore, the ALJ's decision represents the final decision of the Commissioner.  (*Id*.)

Plaintiff thereafter timely filed this action for judicial review under 42 U.S.C. § 405(g), asserting

that the findings of the Commissioner are not based upon substantial evidence and that improper

legal standards were applied.  (Doc. 1 at 2).

## II. STANDARD OF REVIEW

In reviewing claims brought under the Social Security Act, this court's role is a narrow

one: "Our review of the Commissioner's decision is limited to an inquiry into whether there is

substantial evidence to support the findings of the Commissioner, and whether the correct legal

---

[2]Citations to (R. ___) are to the page of the administrative record, which is encompassed within Docs. 6-1 to 6-8.

standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see also*

*Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).  The court gives deference to factual

findings and reviews questions of law de novo.  *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th

Cir. 1991).  The court "may not decide the facts anew, reweigh the evidence, or substitute [its]

judgment for that of the [Commissioner], rather [it] must scrutinize the record as a whole to

determine if the decision reached is reasonable and supported by substantial evidence." *Martin v.*

*Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233,

1239 (11th Cir. 1983)) (internal quotations and other citation omitted).  "The Commissioner's

factual findings are conclusive if supported by substantial evidence." *Wilson*, 284 F.3d at 1221

(citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Allen v. Bowen*, 816 F.2d 600,

602 (11th Cir. 1987)).  "Substantial evidence" is "more than a scintilla and is such relevant

evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v.*

*Comm'r of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citations

omitted).  As just noted, conclusions of law made by the Commissioner are reviewed de novo.

*Cornelius,* 936 F.2d at 1145.  "No ... presumption of validity attaches to the [Commissioner's]

conclusions of law." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III.  DISCUSSION

**A.     The Facts**

    **1.     Background**

At the time of the decision in this case, Plaintiff was forty-seven years old with a high

school education.  (R. 20).  She has past relevant work as a security guard, which the ALJ

determined she is unable to perform.  (*Id.*)

## 2.    ALJ Findings

The ALJ found that Plaintiff had a severe physical impairment of degenerative disc

disease.  (R. 14).  She also found that Plaintiff had no impairment or combination of impairments

that met or medically equaled any listing.  (*Id*.)  She further found that Plaintiff had the RFC to

perform sedentary work, except that she could occasionally balance, stoop, kneel, crouch and

crawl; that she could occasionally climb ramps and stairs; and, that she should avoid all exposure

to danger, moving and unguarded machinery, and all exposure to unprotected heights.  (*Id*. at 15).

The ALJ determined that she could not return to her past relevant work as a security guard.  (*Id*.

at 20).  She concluded, however, based on vocational expert testimony, that there was other work

in significant numbers that Plaintiff could perform.  (*Id*. at 2l).  Her final conclusion was that

Plaintiff was not disabled.  (*Id*.)

## B.    Analysis

Plaintiff argues the ALJ erred in that her opinion is not based on a medical opinion.

(Doc. 11 at 6).  Specifically, she states that the ALJ erred (1) in rejecting the opinion of

Plaintiff's treating chiropractor source, (2) in failing to re-contact the treating chiropractor who

completed the Physician's Capacities Evaluation ("PCE"), and (3) in failing develop the record

by obtaining a medical source opinion ("MSO") by consultive examination ("CE").  (Doc. 11 at

6-8).

As noted above, the ALJ found that Plaintiff was capable of performing sedentary work

with certain limitations.  (R. 15-20).  Plaintiff's over-arching challenge is that this conclusion is

wrong because her RFC is not based on medical opinion evidence.  (Doc. 11 at 6-8).  The

Commissioner responds that "there is no binding Eleventh Circuit precedent requiring an ALJ to

obtain an assessment of work-related limitations from a treating or examining physician in order

to assess a claimant's RFC."  (Doc. 12 at 5).

An RFC is an "individual's maximum remaining ability to do sustained work activities in

an ordinary work setting on a regular and continuing basis ... [which] means 8 hours a day for 5

days a week, or an equivalent work schedule."  SSR 96-8p, 1996 WL 374184 (July 2, 1996).  It

"involves determining the claimant's ability to do work in spite of his [or her] impairments in

consideration of all relevant evidence."  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.

1997); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a).  It is the responsibility of the

Commissioner to determine a claimant's RFC.  *See Robinson v. AStrue*, 3605 F. App'x 993, 999

(11th Cir. 2010) (stating that "the task of determining a claimant's residual functional capacity

and ability to work is within the province of the ALJ, not of doctors").  As recently noted by

Chief Judge Karon O. Bowdre:

> Because the hearing before an ALJ is not an adversarial proceeding, the
> ALJ has a basic obligation to develop a full and fair record before determining a
> claimant's Residual Functional Capacity. *Ellison v. Barnhart*, 355 F.3d 1272,
> 1276 (11th Cir. 2003).  Developing a full and fair record, however, does not
> require an ALJ to secure a medical source opinion regarding the claimant's RFC.
> *See* 20 C.F.R. §§ 404.1546(c), 416.946(c); *see also Langley v. Astrue*, 777 F.
> Supp. 2d 1250, 1261 (N.D. Ala. 2011) ("The failure to include [an RFC
> assessment from a medical source] at the State agency level does not render the
> ALJ's RFC assessment invalid."); *Green v. Soc. Sec. Admin*, 223 F. App'x 915,
> 923–24 (11th Cir. 2007).  Because the overall RFC determination is "based on all
> the relevant evidence in [the claimant's] case record," 20 C.F.R. §§
> 404.1545(a)(1), 416.945(a)(1) (emphasis added), the ALJ can fulfill his
> responsibility to develop the record even without a medical source opinion.  Thus,
> as long as the ALJ's determination is based on substantial evidence, the absence
> of an RFC assessment by a medical source will not render the ALJ's RFC
> determination invalid.  *Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 924 (11th
> Cir. 2007).

> While the failure of an ALJ to rely upon an RFC assessment from a
> medical source is not enough to invalidate the ALJ's overall RFC determination,
> the ALJ's duty to fully develop the record may require the ALJ to order a
> consultative examination if "necessary to make an informed decision." *Smith v.*
> *Commissioner*, 501 F. App'x. 875, 878 (11th Cir. 2012).  Federal regulations
> provide that such an evaluation is appropriate "to resolve an inconsistency in the
> evidence or when the evidence as a whole is insufficient to allow [the ALJ] to
> make a determination."  20 C.F.R. §§ 404.1519a(b), 416.919a(b).  Ultimately,
> however, the general rule remains: if substantial evidence supports the ALJ's
> decision, the ALJ does not err in denying a request for a consultative examination.
> *Holladay v. Bowen*, 848 F.2d 1206, 1209-10 (11th Cir. 1988); *see also Reeves v.*
> *Heckler*, 734 F.2d 519, 522 n. 1 (11th Cir. 1984).

*Thompson v. Colvin*, 2014 WL 1278085, *2-3 (N.D. Ala. 2014).

It is also well-settled that Plaintiff bears the burden of proving that she is disabled.  *See*

20 C.F.R. § 416.912(a) ("In general, you have to prove to us that you are blind or disabled.  This

means that you must furnish medical and other evidence that we can use to reach conclusions

about your medical impairment(s)."); 20 C.F.R. § 416.912(c) ("Your responsibility.  You must

provide medical evidence showing that you have an impairment(s) and how severe it is during

the time you say that you are disabled. You must provide evidence, without redaction, showing

how your impairment(s) affects your functioning during the time you say that you are disabled,

and any other information that we need to decide your claim."); *Ellison v. Barnhart*, 355 F.3d

1272, 1276 (11th Cir. 2003) (stating that "the claimant bears the burden of proving that he is

disabled, and, consequently, he is responsible for producing evidence in support of his claim").

1.      **Rejection of Dr. Manasco's PCE**

This court finds that there is substantial evidence to support the ALJ's RFC findings

regarding Plaintiff.  At the outset, the ALJ noted that Plaintiff underwent an MRI of her lumbar

spine on February 16, 2011.  It revealed normal findings of the upper three lumbar levels, but the

lower lumbar showed degenerative changes.  (R. 17, 207).  Specifically, she observed that at L4-5, there was "mild annular bulge and mild facet joint degenerative change, but no herniation or significant stenosis;" at L5-S1, there was "mild annular bulge and facet joint hypertropic degenerative change," but no herniation or definite significant stenosis; and the vertebral bodies and conus revealed no abnormalities.  (*Id*.)

On April 7, 2011, Plaintiff's treating chiropractor, Brian Manasco, D.C., completed a RFC questionnaire concerning Plaintiff.  He diagnosed Plaintiff with L5 disc degeneration and bulging.  (R. 17, 237).

> He opined that [Plaintiff's] prognosis was fair .... that [Plaintiff] would need to recline or lie down in excess of the typical fifteen-minute break in the morning, the thirty-sixty minute lunch, and the typical fifteen-minute break in the afternoon. He opined that [Plaintiff] was able to walk two city blocks without rest or pain .... that [Plaintiff] was able to sit for twenty minutes at one time and stand/walk for ten minutes at one time .... that [Plaintiff] could sit for three hours during an eight-hour day and stand/walk for three hours during an eight-hour workday .... that [Plaintiff] would need to shift postions at will from sitting, standing, and walking, and that [Plaintiff] would need to take unscheduled breaks every one to two hours for approximately five to ten minutes.  He opined that [Plaintiff] could frequently lift and carry ten pounds or less, and occasionally lift and carry twenty pounds. [Plaintiff] has no limitations in doing repetitive reaching handling, or fingering. Dr. Manasco opined that [Plaintiff] would likely miss three or four days of work per month.

(R. 17, 237-38).

On December 8. 2011, Plaintiff was seen at the Alabama Outpatient Surgery Center for a lumbar epidural steroid injection.  (R. 17, 209, 212, 223, 230-31).  There were no complications noted and Plaintiff's postoperative diagnoses were "acute and chronic low back pain and disc bulges at L4-L5 and L5-S1 with radicular pain left leg."  (R-17, 230-31).

On January 30, 2012, Plaintiff was seen at the Outpatient Surgery Center complaining of left S1 joint pain.  (R-17, 232).  Plaintiff received an epidural block that did not impact the pain.  She complained of tenderness over the SI joint, and positive FABER and Patrick's.  Her physical examination "revealed tenderness in the area with no evidence of any long track signs."  (*Id*.)  Her "MRI [was] negative."  (R. at 17, 232).  The ALJ noted that her MRI revealed "mild degenerative spinal stenosis at L4-5 with mild to moderate left L5 lateral recess stenosis and borderline spinal stenosis at L3-4."  (R. at 17, 233).  A left SI joint injection was recommended.  She received a "transforaminal epidural steroid injection" on February 14, 2012.  (R. 17, 234).  There were no problems or complications.  (R. 17, 235).

On March 5, 2012, Plaintiff went to the Orthopedic Center complaining of low back and left leg pain.  (R. 17, 236).  Plaintiff informed the treating doctor that Lortab was the only thing that helped her pain.  (*Id.*)  Her physical examination revealed that Plaintiff had "diffuse lumbar tenderness to palpation with guarded full range of motion in the lumbar spine."  (*Id.*)  The ALJ noted:

> [Plaintiff's] straight leg raise was positive on theleft causing some tightness in the posterior and lateral thigh.  Her motor strength was 5/5 in right lower extremity and left lower extremity with the exception of some give way left ankle dorsiflexion.  1+ symmetric reflexes noted sensation was sightly decreased to light touch in the left lateral calf.  It was recommended that the claimant udnergo surgery because of some nerve impingement.  The claimant has no insurance, and the only other options were therapy or long-term pain management.  [Plaintiff] requested Lortab, but was informed this was unable to be refilled long term....

(R. 18, 236).

It is evident from the record that the ALJ considered Dr. Manasco's opinion.  She stated:

> As for the opinion evidence, the undersigned has considered the opinion of Dr. Manasco.  In doing so, the undersigned notes that his opinion that the claimant

could frequently lift and carry ten pounds or less, and occasionally lift and carry twenty pounds, that the claimant could sit for three hours during an eight-hour day and stand/walk for three hours during an eight-hour workday, and that the claimant has no limitations in doing repetitive reaching, handling, or fingering ... is consistent with the objective findings.... To the degree, that Dr. Manasco's opinion differs from that of the undesigned, his opinion is accorded little weight, as the undesigned finds that this portion of his opinion is inconsistent with the other evidence of record. In addition, Dr. Manasco is a Chiropractor, not a medical doctor, which is not recognized as a treating medical source by the Social Security Administration.

(R. 19). The ALJ credited part of Manasco's opinion, finding that Plaintiff was capable of performing sedentary work. (R. 15, 19, 237-38). The ALJ also noted that Manasco's opinion that Plaintiff could frequently lift and carry 10 pounds or less, and occasionally lift and carry 20 pounds, was less restrictive than her "sedentary work" RFC determination.[3] (*Id.*) She further noted that the other evidence does not support his conclusions. As is discussed below, the court agrees.

Plaintiff's February 16, 2011 MRI reveals that there was only a "mild annular bulge and mild facet joint degenerative change, but no herniation or significant stenosis" at L4-L5; there was only a "mild annular bulge and facet joint hypertropic degenerative change," but no herniation or definite significant stenosis at L5-S1; and "the vertebral bodies and conus show no abnormalities." (R. 207). Similarly, Plaintiff's January 30, 2012 MRI revealed mild

---

[3]"Sedentary work" is defined as follows:

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a); 20 C.F.R. § 416.967(a).

degenerative spinal stenosis at L4-5 with mild to moderate left L5 lateral recess stenosis and borderline spinal stenosis at L3-4.  (R. 233).

Plaintiff was last treated before her October 16, 2012 ALJ hearing on March 5, 2012.  (R. 236).  She complained of lower lumbar tenderness.  (*Id*.)  She also complained that she "had a couple of severe episodes into her hips and bilateral legs causing her to fall to the floor recently." (*Id*.)  She was treated with medication due to her lack of insurance and financial situation.  (*Id*.) Her only other reported treatment was after the hearing on November 22, 2012.  (R. 240).  She was seen at the emergency room at Lakeland Community Hospital in Haleyville, Alabama.  The discharge sheet from the emergency room states that Plaintiff was diagnosed with Lumbago and treated with prescription medication, including Flexeril, Motrin, and Lortab.  (*Id*.)  It was also noted that she was to follow-up with a private physician in a week.  (*Id*.)  There is no indication in the record that she did so.

The ALJ found Plaintiff's sporadic treatment history significant.  The court agrees, and finds that fact is an appropriate and important one to consider.  *See Flaten v. Sec'y of Health & Human Services*, 44 F.3d 1453, 1464 (9th Cir. 1995) (noting that "the ALJ was entitled to draw an inference from the general lack of medical care for back problems during the intervening years"); *see also Barrett v. Shalala*, 38 F.3d 1019, 1023 (9th Cir. 1994) (noting that ALJ's conclusions that minimal treatment was inconsistent with claims of disabling pain).  It tends to demonstrate the true nature and extent of Plaintiff's problem.  In this case, that Plaintiff's sporadic medical treatment was not supportive of Manasco's claim of disabling back pain.  In sum, she was seen approximately five times in a twenty-month period and was typically treated via medication.

Also supporting the ALJ's determination is the evidence from Plaintiff's husband that

while he does help Plaintiff dress when she is in pain and helps here in and out of the shower,

> [h]e reported no difficulties [Plaintiff] has with caring for her hair, shaving,
> feeding herself, or using the bathroom.  He reported that [Plaintiff] does not need
> any special reminders .... she prepares meals and does some household chores
> such as light housework and laundry.  When [Plaintiff] travels, she drives in a car,
> and she is able to go out alone.  [Plaintiff] shops in stores for medicine and food.
> [Plaintiff] shops once a week for approximately one hour.  [Plaintiff] is able to
> pay bills, count change, and use a checkbook.  She is able to complete tasks and
> follow written and vernal [sic] instructions....

(R. 20, 179-86).  He also noted that Plaintiff is able to drive herself.  (R. 182, *see also* R. 190).

Finally, the ALJ also considered the fact that Plaintiff did not seek emergency room treatment or

treatment at any type of free clinic.  Plaintiff also did not seek any help from a medical assistance

program.  (R. 17, 35-36, 165-67, 200).

To the extent that Dr. Manasco states that Plaintiff's symptoms "[c]onstantly" interfere

with her ability to perform simple work-related tasks (R. 237, question 4), there is nothing in the

record to support this conclusion.  To the contrary, as just noted, her symptoms appear more

episodic than constant.  Plaintiff also states that her pain is worse on some days and "not as bad

on others."  (R. 192).

In sum, the undersigned finds that the ALJ's decision is supported by substantial evidence

and that she properly accepted and rejected various parts of Dr. Manasco's PCE.[4]

---

[4]The court notes, "Acceptable medical sources are (1) licensed physicians; (2) licensed or certified psychologists; (3) licensed optometrists ...; (4) licensed podiatrists ...; and (5) qualified speech-language pathologists." 20 C.F.R. § 404.1513(a)(1)-(5).  A chiropractor is not considered an acceptable medical source that can be used to establish whether the claimant has a medically determinable impairment. 20 C.F.R. § 404.1513(a).  However, a chiropractor is considered a source from which evidence may be used to show the severity of a claimant's impairments and how they affect her ability to work. 20 C.F.R. § 404.1513(d)(1).  *See Crawford v. Comm. of Social Security*, 363 F.3d 1155, 1160 (11th Cir. 2004).

The court also notes that testimony at the ALJ hearing showed that Plaintiff initially was told by Dr. Manasco

**2.      Failing to re-contact Dr. Manasco**

Plaintiff next argues that "[p]ursuant to 20 CFR § 416.912, the ALJ could have recontacted the treating source for clarification of the status and credentials of the chiropractor who completed the ... PCE." (Doc. 11 at 7).  That is the extent of Plaintiff's argument.  Section 416.912(d) does provide that the ALJ has a basic duty to develop a full and fair record.  *Ellison*, 355 F.3d at 1276.  The Eleventh Circuit Court of Appeals has stated that "an ALJ should recontact a claimant's treating physician if the evidence in the record is otherwise inadequate to determine whether the claimant is disabled." *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) (per curiam) (citing 20 C.F.R. §§ 404.1512(e), 416.912(e)).  However, where the ALJ has sufficient evidence in the record to determine that a claimant is not disabled, the ALJ does not err in failing to recontact a treating physician.  *Shaw v. Astrue*, 392 F. App'x 684, 688-89 (11th Cir. 2010) (per curiam).  "In deciding whether to remand, the court should consider 'whether the record reveals evidentiary gaps which result in unfairness or clear prejudice.'" *Williams v. Astrue*, 2012 WL 4329301, *3 (N.D. Ala. 2012) (quoting *Couch v. Astrue*, 267 F. App'x 853, 855 (11th Cir. 2008)) (citations omitted).  If there are no such gaps, a remand is not necessary.

As just discussed, the undersigned finds that the ALJ had sufficient evidence to make her determination.  She was not required under the circumstances to recontact Dr. Manasco.  This claim is unsupported and without merit.

---

told her she had a herniated disc. (R. 30-31).  She later learned from a medical doctor that she did not have a herniated disc. (*Id.*)

**3.      Failing to develop the record by obtaining a medical source opinion ("MSO") by consultive examination ("CE")**

Lastly, Plaintiff argues that the ALJ failed to utilize the option of obtaining a MSO to make an informed decision.  (Doc. 11 at 7).  As a part of this argument, she asserts that the ALJ failed to develop the record by obtaining a CE to make an informed decision.  (*Id*.)  She notes that there is no express requirement for an MSO or RFC assessment, but the ALJ is to avoid substituting his or her judgment for that of a physician.  (*Id*.)  She also argues that an MSO is essential.  (*Id*. at 7-8).  She further goes on to argue:

> The ALJ did not utilized the option of obtaining an MSO by ME review. Having rejected the treating source opinion which would preclude even sedentary work over an eight hour day on a sustained basis ... and there being no other MSOs of record the ALJ ... had no medical opinion on which to rely and no RFC in the specific format required to address each area of functioning under SSR 96-8p.[5]  Such development was particularly warranted in light of SSR 96-9p

---

[5]SSR 96-8p provides:

**PURPOSE**: To state the Social Security Administration's policies and policy interpretations regarding the assessment of residual functional capacity (RFC) in initial claims for disability benefits under titles II and XVI of the Social Security Act (the Act).  In particular, to emphasize that:

> 1. Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.  A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.
>
> 2. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms.  Age and body habitus are not factors in assessing RFC.  It is incorrect to find that an individual has limitations beyond those caused by his or her medically determinable impairment(s) and any related symptoms, due to such factors as age and natural body build, and the activities the individual was accustomed to doing in his or her previous work.
>
> 3. When there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity.
>
> 4. The RFC assessment must first identify the individual's functional limitations or

governing a consideration of a less than sedentary RFC in recognition of the fact
that such an RFC is relatively rare in younger individuals.

(*Id*. at 8).

Plaintiff is correct, as has been already noted, that the ALJ has a duty to develop the

record fully and fairly. *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999). "However, an

ALJ has no duty to order a consultative evaluation where a sufficient record exists to make a

determination and no previous treating or consultative physician has recommended an additional

evaluation." *Bentley v. Astrue*, 2012 WL 4479273, *2 (N.D. Ala. September 25, 2012) (citing

*Wilson*, 179 F.3d at 1278 and *Good v. Astrue*, 240 F. App'x 399, 404 (11th Cir. 2007)).

Similarly, a consultative examination "may" be obtained "where the evidence as a whole is

insufficient to support a determination or decision on [a] claim." 20 C.F.R. § 416.919a(b);

*Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001) ("The regulations 'normally require' a

consultative examination only when necessary information is not in the record and cannot be

obtained from the claimant's treating medical sources or other medical sources"). Finally,

"[w]hen alleging disability, the claimant carries the burden of proving that he is disabled, and he

alone is responsible for producing evidence to support his claim." *Bentley*, 2012 WL 4479273,

*2 (citing 20 C.F.R. §§ 404.1512(a), 416.912(a); *Ellison*, 355 F.3d at 1275).

---

restrictions and assess his or her work-related abilities on a function-by-function
basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545
and 416.945. Only after that may RFC be expressed in terms of the exertional
levels of work, sedentary, light, medium, heavy, and very heavy.

5. RFC is not the least an individual can do despite his or her limitations or
restrictions, but the most.

6. Medical impairments and symptoms, including pain, are not intrinsically
exertional or nonexertional. It is the functional limitations or restrictions caused by
medical impairments and their related symptoms that are categorized as exertional
or nonexertional.

The record is sufficient to support the ALJ's decision.  She was not required under the circumstances to seek an additional consultative evidence.  Plaintiff simply failed to carry her burden of proof in this matter.

## IV. CONCLUSION

For the reasons set forth above, the undersigned finds that the decision of the Commissioner is due to be **AFFIRMED**.  An appropriate order will be entered separately.

**DONE**, this the 14th day of April, 2014.

_John E. Ott_
_____
**JOHN E. OTT**
Chief United States Magistrate Judge